UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**SULLIVAN, WARD, ASHER & PATTON, P.C.**
**25800 Northwestern Hwy., Suite 1000**
**Southfield, Michigan  48075**
**Telephone:  248.746.0700**
**Facsimile:   248.746.2760**
**Attorneys of Record for Plaintiff**
**Matthew I. Henzi #5368212**
**David J. Selwocki #4375499**
_____/

TRUSTEES OF THE SHEET METAL WORKERS
INTERNATIONAL ASSOCIATION LOCAL NO. 38
VACATION FUND, SHEET METAL WORKERS
INTERNATIONAL ASSOCIATION LOCAL NO. 38
INSURANCE AND WELFARE FUND, SHEET METAL
WORKERS INTERNATIONAL ASSOCIATION LOCAL NO. 38
PROFIT SHARING PLAN, SHEET METAL WORKERS
LOCAL 38 LABOR MANAGEMENT COMMITTEE
AND TRUST, SHEET METAL WORKERS LOCAL UNION 38
CRAFT TRAINING FUND, SHEET METAL CONTRACTORS INDUSTRY FUND OF
SOUTHEASTERN NEW YORK, and
SHEET METAL WORKERS INTERNATIONAL
ASSOCIATION LOCAL NO. 38 UNION,

      Plaintiffs,                        Case No.:  16-cv-
                                              Judge

vs.

NOVAK FRANCELLA, LLC, MARK MODZELESKI,
and FIDELITY AND DEPOSIT COMPANY OF MARYLAND,

      Defendants.
_____/

## **COMPLAINT**

      **NOW COME** the above-named Plaintiffs, by and through their attorneys,

**SULLIVAN, WARD, ASHER & PATTON, P.C.**, and for their Complaint against

Defendants, Novak Francella, LLC, Mark Modzeleski, and Fidelity and Deposit

Company of Maryland, state as follows:

## PARTIES, VENUE, AND JURISDICTION

1.      Plaintiffs include the Trustees of, and/or the designated representatives of, the SHEET METAL WORKERS INTERNATIONAL ASSOCIATION LOCAL NO. 38 VACATION FUND, SHEET METAL WORKERS INTERNATIONAL ASSOCIATION LOCAL NO. 38 INSURANCE AND WELFARE FUND, SHEET METAL WORKERS INTERNATIONAL ASSOCIATION LOCAL NO. 38 PROFIT SHARING PLAN, SHEET METAL WORKERS LOCAL 38 LABOR MANAGEMENT COMMITTEE AND TRUST, SHEET METAL WORKERS LOCAL UNION 38 CRAFT TRAINING FUND, SHEET METAL CONTRACTORS INDUSTRY FUND OF SOUTHEASTERN NEW YORK, SHEET METAL WORKERS INTERNATIONAL ASSOCIATED LOCAL NO. 38 UNION, ("FUNDS"), which have administrative offices in the City of Brewster, New York.

2.      Plaintiff Trustees are the named Trustees of the Local No. 38 Insurance and Welfare Fund and Profit Sharing Plan and, further, have for all purposes herein been and have acted as the designated representatives for the collection and disbursement of contributions and assessments for and on behalf of the 38 Labor Management Committee, Local 38 Craft Training Fund, Sheet Metal Contactors Industry Fund of Southeastern New York, and Local No. 38 Union.

3.      The named Trustees are also Trustees and are successor Trustees to the Local No 38 Vacation Fund, which was terminated in July 2009; signatory employers remain obligated to pay designated monies to a vacation account for and on behalf of their employees/members of Local 38 who work under the terms of the collective bargaining agreement.

4.      Plaintiff Trustees are John Tarr, Nick Colombo, Gilbert Lester, Dennis LaVopa, James D'Annibale, and Walter Greenwood. All of the Trustees are citizens of

2

the State of New York. Trustees Tarr, Colombo, and Lester are also participants of the Funds.

5.      Defendant Novak Francella, LLC ("Novak Francella") is a foreign professional service limited liability company organized under the laws of Pennsylvania with its principal place of business in Pennsylvania.  Upon information and belief, the members of Defendant Novak Francella are residents of Pennsylvania.

6.      Defendant Mark Modzeleski ("Modzeleski") was the Administrative Manager for Plaintiff Fringe Funds from 2002 through June 2014.  Mr. Modzeleski is a resident of Delaware.

7.      Defendant Fidelity and Deposit Company of Maryland ("Fidelity") is a corporation organized under the laws of Illinois with its principal place of business in Illinois.

8.      Jurisdiction in this Court is proper pursuant to U.S. 28 USC §1331 in that this matter involves original federal question subject matter jurisdiction arising out of ERISA, subject to  but not limited to ERISA 502(a)(2), 502(a)(3) and 510; and, under federal common law.

9.      This Court has personal jurisdiction over Defendants because they committed the actions identified herein to cause harm within this judicial district, and, because they have had such sustained, consistent, and regular contacts with the region so as to support the exercise of personal jurisdiction, jurisdiction is proper.  In addition, the facts alleged support the exercise of personal jurisdiction over the Defendants.

10.     Jurisdiction is alternatively proper in this Court pursuant to 28 USC §1332 because there is diversity of citizenship between the existing parties and the amount in controversy exceeds $75,000.

11.     Venue is proper in this district pursuant to 28 USC §1391, 29 USC §1132 (e), under ERISA's national venue provision and/or because the Funds are administered in this judicial district and because a substantial part of the events or omissions giving rise to these ERISA claims and federal common law claims occurred and continue to occur in this judicial district.

### GENERAL ALLEGATIONS

12.     Plaintiff Trustees are the named Trustees of the Local No. 38 Insurance and Welfare Fund and Profit Sharing Plan, and have for all purposes herein been and have acted as the designated representatives for the collection and disbursement of contributions and assessments for and on behalf of the Local 38 Labor Management Committee, 38 Craft Training Fund, Sheet Metal Contactors Industry Fund of Southeastern New York, and Local No. 38 Union.

13.     The named Trustees are also Trustees and are successor Trustees to the Local No 38 Vacation Fund, which was terminated in July 2009; signatory employers remain obligated to pay designated monies to a vacation account for and on behalf of their employees/members of Local 38 who work under the terms of the collective bargaining agreement.

14.     For all purposes herein, the individual Plaintiffs who are the named Trustees or designated representatives of the affiliated funds and entities will be referred to as "Trustees"; the funds and related entities involved will be referred to as the "Funds." Further, for all purposes herein, contributions, monies, deductions, and assessments, which signatory employers are obligated to pay pursuant to the CBA, will be referred to collectively as "Contributions."

15.    Pursuant to the terms and provisions of the relevant Collective Bargaining Agreement(s), signatory Employers agreed to pay, in addition to wages, employee fringe benefit contributions and assessments to the Funds for each employee employed by the Employer, and covered by the Agreement ("Contributions").

16.    At all relevant times hereto, Wendy Santucci ("Santucci") was employed by the Plaintiff Funds.

17.    At all relevant times hereto, Defendant Modzeleski was employed by the Plaintiff Funds as Administrative Manager of the Plaintiff Trust Funds and related entities for the purposes set forth herein.

18.    In or around 2015, Plaintiff Funds obtained information which led Plaintiffs to investigate whether an employer contractually obligated to remit fringe benefit contributions to Plaintiff Fringe Funds had systematically failed to remit contributions over a several year period.

19.    In 2015 Plaintiffs confirmed, and Santucci admitted, that one employer, Haldean Sheet Metal Fabricators, Inc., failed to remit fringe benefit contributions to Plaintiff Fringe Funds from 2009-2015.  Santucci admitted that she concealed this employer's failure to remit contributions.  Further, she manipulated accounting records and used fund assets to credit fraudulently certain accounts of this employer.

20.    Plaintiff Fringe Funds terminated Santucci as an employee in July 2015.

21.    Subsequent to her termination, Santucci disclosed that there were two other employers contractually obligated to remit fringe benefit contributions to Plaintiff Funds that failed to pay the correct amount of fringe benefit contributions.  Santucci did not disclose for how long these two employers failed to properly remit fringe benefit contributions.

22.     Plaintiff Funds immediately retained Plante Moran, an independent auditing firm, to conduct a forensic audit of the contributions made by all contractors contractually obligated to remit fringe contributions to Plaintiff Funds.

23.     Plaintiff Funds discovered that Zodiac Industries, Inc. ("Zodiac") and KNM Sheet Metal, Inc. ("KNM") failed to remit fringe benefit contributions to Plaintiff Funds at various times from 2007 through 2015.

24.     Plaintiff Funds' forensic auditor reviewed the hours reported on fringe forms by KNM and Zodiac for the period 2007-2015.  The auditor compared those forms with the payments made by the employers.  During this seven year period, these employers significantly, consistently, and intentionally failed to pay all fringe benefit contributions.

25.     Despite these failures to pay, the employees of these employers, including the owners/controlling principals of these employers, continued to receive fringe benefits, including health care coverage.

26.     Santucci and the employers acted surreptitiously and intentionally concealed their efforts so that Santucci's superiors at the Fund Office would not discover the employers' failure to pay all required contributions.

27.     In 2015, Plaintiff Funds notified Zodiac and KNM that Plaintiff Funds discovered these employers' ongoing scheme to not pay or partially pay fringe benefit contributions.  Immediately, these employers resumed making accurate payments of all fringe benefit contributions for all hours of covered work reported to Plaintiff Funds, as required by the Collective Bargaining Agreement.

28.     Defendant Novak Francella was the auditing firm retained by Plaintiff Funds from 2007-2016.

29.     Novak Francella, as part of its ongoing engagement, was obligated to audit and report on accounts and recordkeeping practices of the fund office.

30.     Novak Francella failed to notify the Trustees of Plaintiff Funds of any accounting, related recordkeeping, or control issues that existed in the Fringe Fund Office which caused Plaintiff Funds to suffer the instant loss.

31.     Plaintiffs suffered a significant monetary loss as a result of the intentional wrongful acts of Santucci, and the unlawful acts/omissions of Defendants Modzeleski and Novak Francella

32.     Defendant Fidelity issued a fidelity crime bond policy in favor of the Trustees of four of the Plaintiff Funds.

33.     Defendant Fidelity issued an insurance bond policy that contains a contractual promise to pay for the instant loss suffered by Plaintiff Funds.

34.     Defendant Fidelity has denied Plaintiff Funds' request to pay the subject loss, in contradiction to the express language of the subject insurance policy purchased by Plaintiff Funds.

35.     As a result of these Defendants' actions, Plaintiffs suffered significant damages consisting of unpaid contributions from 2007-June 2015, liquidated damages, interest, cost of collection, attorney fees, audit costs, as well as the statutory mandates under 29 USC §1132(g).

### Count I – PROFESSIONAL NEGLIGENCE/MALPRACTICE – Novak Francella

36.     Plaintiffs incorporate by reference Paragraphs 1 through 35 as if fully set forth herein.

37.     Plaintiff funds are governed by, among other requirements, the Employee Retirement Income Security Act of 1974 "ERISA."

38.     ERISA requires trust funds such as Plaintiff's to undergo an annual audit of its operations by a qualified, competent, certified public accountant.

39.     Among other things, Novak Francella performed these annual audits of the records and operations of the Insurance and Welfare, Profit Sharing, and Vacation Funds as applicable.

40.     Defendant was aware that the financial reports prepared for the Profit Sharing Plan, Insurance and Welfare Fund, and Vacation Fund were to be used for the particular purpose of all fringe funds, contributions, and deductions over which Plaintiffs had the authority to manage for the purposes set forth herein.

41.     Defendant held itself out to Plaintiffs and otherwise represented itself as competent to render these services to Plaintiffs.

42.     As customary with multi-employer trust fund enterprises, the collection and disbursement of contributions and related assessments are often conducted by a single and/or joint entity on behalf of all related funds and entities who are owed contributions and related assessments per the applicable collective bargaining agreements.

43.     In this instance, Trustees of the Insurance and Welfare, Profit Sharing, and Vacation Funds were also designated representatives for the collection of contributions and related dues and assessments for the various related entities set forth in this complaint ("Contributions").

44.     In this instance, Contributions due from employers to the various and several funds/entities were deposited in a general account.

45.     After deposit in the general account, and ensuing administrative and recordkeeping activities, the Contributions were to be disbursed to specific entities and funds which were owed those Contributions.

46.     Defendant was aware of the above procedure.

47.     Defendant recommended these procedures and approved of them on an ongoing basis.

48.     As part of Defendant's engagement and obligation to Plaintiffs, Defendant performed audits of this general account and the related recordkeeping activity, conduct which, among other things, demonstrated Defendant's understanding of not only Plaintiff's Funds' reliance but that of the related entities.

49.     Defendant led Plaintiffs and related entities to believe that it was properly auditing the internal administrative procedures and recordkeeping of the Plaintiff funds, including but not limited to the general account.

50.     In addition to performing the legally required audits of Plaintiff funds, Defendant assisted the administrative personnel of Plaintiff funds with the preparation of their own unaudited financial reports and compilations, among other things.

51.     Defendant knew that there was significant crossover, and conflict of interest, by assisting in the preparation of financial statements, as well as auditing the same statements.

52.     Defendant failed to disclose to Plaintiffs the significant discrepancies in the general account when Defendant assisted in the preparation of unaudited financial statements and their supporting documents.

53.     Defendant also failed to disclose significant discrepancies in the general account when it audited the general account in its capacity as auditor for the relevant trust funds.

54.     Defendant failed to disclose significant discrepancies when it performed corrective and remedial services regarding the general account.

55.    Plaintiffs engaged Defendant to perform analyses of the general fund account.  Defendant repeatedly failed to identify or disclose the significant discrepancies or lack of internal controls.

56.    Defendant knew of Plaintiff's reliance on Defendant for appropriate auditing and accounting services both in connection with the annual audits and on an ongoing basis throughout the year.

57.    Defendant knew that, not only the funds which expressly retained Defendant, but the related funds and entities, whose contributions and monies were administered and disbursed by the fund office, relied on the professional services of Defendant.

58.    Defendant was aware that the services it performed and the reports it produced would be used for particular purposes, including that the funds deposited and disbursed from the general account would be properly audited and accounted for to the satisfaction of all related funds and entities.

59.    In 2015, following the discovery of Wendy Santucci's misconduct, Defendant was requested to review and report on the operation and activity of the general account.

60.    The above request was made despite the fact that Defendant had previously represented to Plaintiffs that Defendant had been auditing the general account as part of its routine services.

61.    That these corrective and remedial services regarding the general account demonstrated irregularities, errors, and inconsistencies which Defendant failed and/or refused to disclose during the previous accounting performed on the general account.

62.    That the corrective/remedial services undertaken by Defendant were performed negligently.

63.    Plaintiff Trustees and related entities relied on the services and reports prepared by Defendant in their management of all Fringe Benefit Funds and deductions.

64.    Defendant knew and understood that Plaintiff Trustees and related entities relied on Defendant's work product for use in management of all Fringe Benefit Funds and deductions.

65.    Both Plaintiffs (and related entities) and Defendant understood that Defendant continued to advise client in connection with ongoing substantial balances in the general account.

66.    That such advice, as set forth above, was erroneous.

67.    Defendant owed Plaintiffs a duty to exercise due care and skill in providing accounting and auditing services to the Fund.

68.    Defendant breached its duty in negligently analyzing, assessing and communicating the accurate accounting and financial status of the Fund and in providing services consistent with a reasonably prudent auditor and as otherwise set forth herein.

69.    Defendant's performance of its annual audits, including but not limited to the general account, compilations, and other services, demonstrates a failure to exercise due care, material deviation from recognized, accepted professional standards for accountants and auditors as measured by generally accepted auditing standards/generally accepted accounting principles, which proximately caused damage to Plaintiffs, those funds and related entities for which Plaintiff Trustees served as designated representatives and regarding which Defendant knew were in reliance on its professional services.

70.    By committing gross errors and failing to exercise due care and skill in providing auditing services to the Fund and in failing to promptly discover and disclose those errors to the Trustees, Defendant acted negligently, willfully, recklessly and wantonly.

71.    Defendant Novak further breached its duties to Plaintiffs by, among other things:

(a)    Failing to follow Generally Accepted Auditing Standards ("GAAS") during its audits of Plaintiff Funds;

(b)    Failing to adequately plan, design, implement, and supervise audit procedures, in accordance with GAAS, in a manner that would detect a materially misstated financial statement, even when the misstatement is the result of fraud or mistake;

(c)    Failing to understand procedures of the Plaintiff's administrative office in order to determine if a material fraud could occur;

(d)    Failing to report numerous significant internal control deficiencies to Plaintiff Trustees as required under GAAS;

(e)    Failing to properly design and monitor accounting procedures for the general account;

(f)    Failing to notify Plaintiff Trustees of conflict of interest/impaired independence which resulted from accounting and supervisory assistance that Defendant provided on a regular basis regarding general fund activity; and

(g)    Violating AICPA codes of conduct by recommending that the Trustees file falsified Form 5500s with the Department of Labor;

72.    As a direct and proximate result of Defendant's negligence, willful, wanton and reckless misconduct, Plaintiffs have suffered significant damages in the millions of dollars, the exact amount to be determined at trial.

**WHEREFORE**, Plaintiffs request judgment against Defendant including:

(a)    Damages in an amount to be determined at trial;

(b)     Applicable interest, costs and expenses of this action, including reasonable attorney's fees, and such other and further relief as the Court deems just and proper.

## Count II – BREACH OF CONTRACT – Novak Francella

73.     Plaintiffs repeat and reallege each and every allegation of Paragraphs 1 through 72 as though fully stated herein.

74.     Defendant entered into a contractual relationship with the Trustees to serve as the Fund's auditor.  Among other things, the respective contract obligated Defendant to provide accurate, reliable and quality auditing services to the Fund and in its oral and written representations to the Trustees, Defendant represented, inter alia:

(a)     That Defendant was an auditing and accounting firm with the professional expertise to provide advice, analysis, and recommendations concerning the Funds' assets and liabilities, to comply with required standards, and meet certain ERISA filing requirements;

(b)     That Defendant was an experienced and qualified employee benefit auditing and accounting firm well-suited to service the Funds' needs;

(c)     That it would provide the Trustees an accurate analysis of the Funds' assets and liabilities;

(d)     That it would promptly identify significant control deficiencies as required by GAAS; and

(e)     That it would plan, design, implement, & supervise audit procedures in compliance with GAAS;

(f)     That is would supply and supervise qualified personnel to service the account;

(g)     That it would state with accuracy, if appropriate, that the Plan's financial statements conformed to generally accepted accounting principles and to other legal requirements;

(h)     That it would perform appropriate testing of accounting records and other applicable documentary evidence supporting the transactions recorded in the accounts;

(i)     That it would obtain reasonable assurance, if appropriate, that the financial statements were free of material misstatements and communicate same to the Plaintiffs;

(j)     That it would obtain an understanding of the Plans and their environment, including internal control sufficient to assess risks of material misstatements of the financial statements.

75.     Defendant was aware that the financial reports prepared for the Profit Sharing Plan, Insurance and Welfare Fund, and Vacation Fund were to be used for the particular purpose of auditing all fringe funds and deductions over which Plaintiffs had the authority to manage for the purposes set forth herein.

76.     Defendant knew that, not only the funds which expressly retained Defendant, but the related funds and entities, whose contributions and monies were administered and disbursed by the fund office, relied on the professional services of Defendant.

77.     Defendant was aware that the services it performed and the reports it produced would be used for particular purposes, including that the funds deposited and disbursed from the general account would be properly audited and accounted for to the satisfaction of all related funds and entities.

78.     Plaintiff Trustees relied on the services and reports prepared by Defendant in their management of all Fringe Benefit Funds and deductions.

79.     Defendant understood that Plaintiff Trustees were relying on Defendant's work product for use in management of all Fringe Benefit Funds and deductions.

80.     The Trustees, acting on behalf of the Funds, performed all of their obligations under their respective contract with Defendant.

81.     By recklessly, wantonly, willfully and negligently repeatedly committing gross errors in providing auditing services to the Funds, in failing to promptly discover and disclose those errors to the Trustees, by deliberately concealing those errors and

misleading the Plaintiffs, and by such other conduct as set for otherwise herein, Defendant breached its contract with the Trustees and the Funds.

82.    By reason of the foregoing, Plaintiffs have suffered significant damages in the millions of dollars, the exact amount to be determined at trial.

**WHEREFORE**, Plaintiffs request judgment against Defendant for breach of contract, including:

(a)    Damages in an amount to be determined at trial;

(b)    Applicable interest, costs and expenses of this action, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

## Count III - NEGLIGENT AND/OR FRAUDULENT MISREPRESENTATION – Novak Francella

83.    Plaintiffs repeat and reallege each and every allegation of Paragraphs 1 through 82 as though fully stated herein.

84.    From at least as early as 2007 and continuing each year thereafter, Defendant made several negligent, reckless and/or fraudulent misrepresentations of material fact to Plaintiffs with the intent to deceive Plaintiffs, silently or otherwise, intentionally or innocently, resulting in the concealment of material facts with the intent that Plaintiffs would rely on said representations or actions.

85.    Defendant, at various times, by acts and/or omissions, made negligent, reckless and/or fraudulent misrepresentations of material fact to Plaintiffs regarding: the assets and liabilities of the Fund; that no relevant internal control deficiencies existed; that fringe benefit contributions had properly been paid; and that the corpus of each Fund was properly accounted for.

86.     Defendant also made negligent, reckless and/or fraudulent misrepresentations of material fact as to the appropriateness of the underlying auditing reports, and/or methods and/or decision-making criteria.

87.     During the period of time applicable to Defendant's services to the Funds, Defendant continued to make negligent, reckless and/or fraudulent misrepresentations of material fact that the Funds were properly managed and accounted for.

88.     Defendant owed Plaintiffs a duty not to make negligent, reckless and/or fraudulent misrepresentations of material fact concerning the Funds.

89.     Defendant owed Plaintiffs a duty of full and honest and accurate disclosure in connection with that Defendant's performance of auditing services.

90.     Defendant knew the representations it made to Plaintiffs were false when made or such representations were made recklessly and/or negligently.

91.     Defendant intended that Plaintiffs and the related funds and entities would rely on the representations that Defendant made to Plaintiffs regarding the Funds.

92.     Plaintiffs and the related funds and entities reasonably, but detrimentally, relied on Defendant's negligent, reckless and/or fraudulent misrepresentations of material fact.

93.     Due to Defendant's negligent, reckless and/or fraudulent misrepresentations, Plaintiffs have suffered significant damages in the millions of dollars, the exact amount to be determined at trial.

**WHEREFORE**, Plaintiffs request judgment against Defendant, including:

(a)     Damages in an amount to be determined at trial;

(b)     Applicable interest, costs and expenses of this action, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

## Count IV – SILENT FRAUD BASED ON FAILURE TO DISCLOSE FACTS – Novak Francella

94.     Plaintiffs repeat and reallege each and every allegation of Paragraphs 1 through 93 as though fully stated herein.

95.     During the respective time period of Defendant's provision of services to the Fund, Defendant fraudulently, with the intent to deceive Plaintiffs, concealed material facts, silently or otherwise, intentionally or innocently, resulting in the concealment of material facts with the intent that Plaintiffs would rely on said representations or actions.

96.     During the course of the engagement of Defendant as auditor for the Funds, Defendant fraudulently concealed its errors, including the impact of those errors on the status of the Funds.

97.     Defendant fraudulently failed to disclose that the Funds were not properly managed and accounted for, and that internal control deficiencies, of the nature which caused the subject loss, existed.

98.     Defendant fraudulently failed to disclose the material facts that the underlying auditing reports, audit methods and/or decision making criteria were not appropriate and, in fact created the false impression that they were appropriate.

99.     Defendant had actual knowledge of the facts.

100.    Defendant failed to disclose the facts to cause Plaintiffs to have a false impression.

101.    When Defendant failed to disclose the material facts, Defendant knew the failure would create a false impression.

102.    When Defendant failed to disclose the facts, Defendant intended that Plaintiffs would rely on the resulting false impression.

103.   Defendant owed Plaintiffs a duty of full and honest disclosure in connection with its performance of auditing services.

104.   Plaintiffs reasonably, but detrimentally, relied on Defendant's fraudulent concealment of its errors and thereby experienced a significant shortfall in the Funds.

105.   Because of Defendant's fraudulent failure to disclose material facts, the Trustees were deprived of the opportunity to manage the Funds in a sound manner consistent with their obligations.

106.   But for the Defendant's fraudulent concealment, Plaintiffs would have discovered Defendant's errors as well as the wrongful conduct of Fund personnel.

107.   But for the Defendant's fraudulent concealment, the Plaintiffs and related entities would not have experienced a significant shortfall and Plaintiffs would have been in a position to consider various options in managing the Funds.

108.   The Funds has suffered significant damages in the millions of dollars as a result of the Trustees' reliance on Defendant's fraudulent failure to disclose material facts, the exact amount to be determined at trial.

WHEREFORE, Plaintiffs request judgment against Defendant, including:

(a)   Damages in an amount to be determined at trial;

(b)   Applicable interest, costs and expenses of this action, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

## Count V – BREACH OF FIDUCIARY DUTY – Novak Francella

109.   Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 108 above as though fully set forth herein.

110.   Throughout the period of its retention, Defendant provided advice and recommendations regarding the Funds' assets and liabilities and the Funds' alleged

compliance with statutory standards and ERISA filing requirements, including but not limited to the particulars set forth above.

111.   Defendant knew that there was significant crossover, and conflict of interest, by assisting in the preparation of financial statements, as well as auditing the same statements.

112.   Defendant failed to disclose to Plaintiffs the significant discrepancies in the general account when Defendant assisted in the preparation of unaudited financial statements.

113.   Defendant also failed to disclose significant discrepancies in the general account when it audited the general fund in its capacity as auditor for the relevant trust funds.

114.   Plaintiffs engaged Defendant to perform analyses of the general fund account.  Defendant repeatedly failed to identify or disclose the significant discrepancies or lack of internal controls.

115.   During its retention, Defendant prepared annual audit reports, which accounted for the amounts of fringe benefit contributions and benefits paid, and purported to value accurately the Funds' assets and liabilities based upon reasonably accepted accounting methods.

116.   Through its misconduct as summarized above and for the reasons set forth in these paragraphs, Defendant's misconduct constituted a breach of its fiduciary duties under law.

117.   That because Defendant assisted the staff of Plaintiff Funds on an ongoing basis with recordkeeping and accounting activity, Defendant performed a supervisory

function and became part of the internal control structure thereby making Defendant a fiduciary regarding the accuracy of those accounting records.

118.    That Defendant, as an active and supervising participant in the internal control system of Plaintiff Funds, unlawfully expressed their professional opinion on those same procedures and records produced by that system in violation of applicable professional accounting standards of conduct.

119.    That Defendant's opinion regarding the financial statements was erroneous.

120.    The functions performed by the Defendant during its retention rendered its influence over the Funds so great that it conferred effective discretionary authority over the Funds and created fiduciary liability under law.

121.    In performance of its services Defendant strayed beyond its usual professional functions so as to establish fiduciary liability under law.

122.    The functions of the Defendant were so complex and the Defendant's influence so great that none of the Funds' Trustees were able to challenge the Defendant's reports and recommendations.

123.    Defendant was an ERISA fiduciary and/or was a de facto ERISA fiduciary within the meaning of ERISA §321(a) because it had control respecting management and disposition of Plan assets of the Funds.

124.    Defendant was an ERISA fiduciary or de facto fiduciary because he had discretionary authority and/or responsibility in the administration of the funds.

125.    Defendant breached his fiduciary duties in violation of 29 USC 404, 409(a) and 1131(a)(2) and/or (3) in performing his fiduciary functions by:

    (a)    Failing to follow Generally Accepted Auditing Standards ("GAAS") during its audits of Plaintiff Funds;

(b)     Failing to adequately plan, design, implement, and supervise audit procedures, in accordance with GAAS, in a manner that would detect a materially misstated financial statement, even when the misstatement is the result of fraud or mistake;

(c)     Failing to report numerous significant internal control deficiencies to Plaintiff Trustees as required under GAAS;

(d)     Failing to properly design and monitor accounting procedures for the General Fund;

(e)     Failing to notify Plaintiff Trustees of conflicting interest/impaired independence;

(f)     Providing false and misleading opinions on sufficiencies of Plaintiff's system of internal controls which they supervised and of which they were a component part;

(g)     Providing false and misleading opinions on the accuracy of Plaintiff's financial records, the same records regarding which they performed underlying activity and a supervisory role in producing; and

(h)     Violating AICPA codes of conduct by recommending that the Trustees filed falsified Form 5500s with the Department of Labor.

126.   As a direct and proximate result of Defendant's breach of fiduciary duties, Plaintiffs have suffered significant damages in the millions of dollars, the exact amount to be determined at trial.

**WHEREFORE**, pursuant to ERISA 502(a)(2) and/or (3), Plaintiffs request that this Honorable Court enter judgment in favor of Plaintiffs on this claim for fiduciary breach and enter an Order of judgment for all unpaid fringe benefit contributions, liquidated damages, interest, costs of collection, and all amounts mandated by 29 USC §1132(G)(2).

## COUNT VI – Breach of ERISA Fiduciary Duty – Mark Modzeleski

127.   Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 126 above as though fully set forth herein.

128.    Defendant was an ERISA fiduciary and/or was a de facto ERISA fiduciary within the meaning of ERISA §321(a) because he had authority and/or control respecting management and/or disposition of Plan assets of the Funds.

129.    Defendant was an ERISA fiduciary or de facto fiduciary because he had discretionary authority and/or responsibility in the administration of the funds.

130.    Defendant's imprudent administration, management, and disposition of Plan assets was a proximate cause of the damages described herein.

131.    Defendant owed fiduciary duties under ERISA to participants and beneficiaries of the Fringe Benefit Funds, including but not limited to, the duties of prudently operating and managing the Funds for the exclusive benefit of participants and beneficiaries, and the duty of disclosure to participants, including certain of these Plaintiffs.

132.    These fiduciary duties are enforceable under ERISA 502(a)(2) and/or (3), 29 USC §1132(a)(2) and/or (3), by Plaintiffs, under the Plan.

133.    Defendant breached his fiduciary duties in violation of 29 USC 404, 409(a) and 1131(a)(2) and/or (3) in performing his fiduciary functions by:

   (a)    Mismanaging the accounts of Fringe Fund assets;

   (b)    Failing to supervise the management and accounting of Fund assets;

   (c)    Permitting the comingling of Fund assets for the benefit of certain participants and beneficiaries, but to the detriment of other participants and beneficiaries;

   (d)    Reporting false accountings of Fund assets to the Plaintiff Trustees;

   (e)    Diverting funds away from the respective Fringe Funds, causing harm to the corpus of each Fund and endangering the Funds' ability to pay benefits to participants and beneficiaries;

(f)   Malfeasance in administration of Fringe Benefit contributions in accordance with the terms of the respective Plan documents and under law.

134.   The foregoing fiduciary breaches have damaged Plaintiffs, including, but not limited to, the loss of contributions and wrongful diversion of fund assets.

135.   Pursuant to ERISA 502(a)(3), Plaintiffs are entitled to appropriate equitable relief to redress Defendant's violation of ERISA.

**WHEREFORE**, pursuant to ERISA 502(a)(2) and/or (3), Plaintiffs request that this Honorable Court enter judgment in favor of Plaintiffs on this claim for fiduciary breach and enter an Order of judgment for all unpaid fringe benefit contributions, liquidated damages, interest, costs of collection, and all amounts mandated by 29 USC §1132(G)(2).

## Count VII – NEGLIGENT MISREPRESENTATION – Mark Modzeleski

136.   Plaintiffs repeat and reallege each and every allegation of Paragraphs 1 through 135 as though fully stated herein.

137.   From at least as early as 2007 and continuing each year thereafter, Defendant made negligent misrepresentations of material fact to Plaintiffs, which deceived Plaintiffs, silently or otherwise, and on which Plaintiffs relied.

138.   Defendant, at various times, made negligent misrepresentations to Plaintiffs regarding: the assets and liabilities of the Fund; that fringe benefit contributions had properly been paid; and, that the corpus of each Fund was properly accounted for.

139.   From as early as 2007 through the remainder of his tenure, Defendant continued to make negligent misrepresentations of material fact that the Funds were properly managed and accounted for.

140.   Defendant owed Plaintiffs a duty not to make negligent misrepresentations of material fact concerning the Funds.

141.   Defendant owed Plaintiffs a duty of full and honest and accurate disclosure in connection with Defendant's performance of his duties as Administrative Manager.

142.   Defendant knew that Plaintiffs would rely on the representations made regarding the Funds.

143.   Plaintiffs reasonably but detrimentally relied on Defendant's negligent misrepresentations of material fact.

144.   Due to Defendant's negligent misrepresentations, the Trustees were, among other things, deprived of the opportunity to manage the Funds in a sound manner consistent with their objectives.

145.   Plaintiffs have suffered damages in the millions of dollars as a result of their reliance on Defendant's negligent misrepresentations.

WHEREFORE, Plaintiffs request judgment against Defendant, including:

(a)   Damages in an amount to be determined at trial;

(b)   Applicable interest, costs and expenses of this action, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

## Count VIII – SILENT FRAUD BASED ON NEGLIGENT FAILURE TO DISCLOSE FACT – Mark Modzeleski

146.   Plaintiffs repeat and reallege each and every allegation of Paragraphs 1 through 145 as though fully stated herein.

147.   From as early as 2007 and continuing throughout his tenure, Defendant concealed material facts, silently or otherwise, with the intent that Plaintiffs would rely on said representations or actions.

148.   Defendant had actual knowledge of the facts.

24

149.   Defendant failed to disclose the facts to cause Plaintiffs to have a false impression.

150.   When Defendant failed to disclose the material facts, Defendant knew the failure would create a false impression.

151.   When Defendant failed to disclose the facts, Defendant intended that Plaintiffs would rely on the resulting false impression.

152.   Defendant, among other things, failed to bring to the attention of the Trustees the fact that there were employers who did not properly pay fringe benefits as required, that the books and records of the fund regarding contributions were not accurate, and that the corpus of each fund was not properly accounted for.  This created the false impression that fringe benefits had properly been paid.

153.   Defendant owed Plaintiffs a duty of full and honest and accurate disclosure in connection with the Defendant's performance of his position as Administrative Manager.

154.   Plaintiffs reasonably, but detrimentally, relied on Defendant's fraudulent failure to disclose these material facts and the false impression this created. Further, Defendant knew that Plaintiffs would rely on these non-disclosures and false impressions.

155.   Because of Defendant's failure to disclose material facts, the Trustees were deprived of the opportunity to manage the Funds in a sound manner consistent with their objectives.

156.   The Funds has suffered significant damages as a result of the Trustee' s reliance on Defendant' s fraudulent failure to disclose material facts in the millions of dollars, the exact amount to be determined at trial.

**WHEREFORE**, Plaintiffs request judgment against Defendant, including:

(a)     Damages in an amount to be determined at trial;

(b)     Applicable interest, costs and expenses of this action, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

## COUNT IX - DECLARATORY RELIEF – Fidelity

157.    Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 156 above as though fully set forth herein.

158.    From 2007-present, Plaintiffs Vacation Fund, Insurance and Welfare Fund, Profit Sharing Plan, and Labor Management Committee and Trust were insured with Defendant Fidelity under the provisions of an insurance policy issued by Defendant that was then in effect and for which applicable premiums were paid.  The policy included a provision for fidelity crime coverage in the amount of $3,000,000.00.

159.    Under the terms and conditions of the insurance policy, Defendant became obligated to pay compensatory damages and its insureds are legally entitled to recover from this Defendant as a result of the deliberate misconduct of fund employee Santucci.

160.    Fund employee Wendy Santucci committed the following:

(a)     Misappropriation of fringe fund assets and concealment of same;

(b)     Commingling Fund assets for the benefit of certain participants and beneficiaries, but to the detriment of other participants and beneficiaries;

(c)     Failing to report a true accounting of Fund assets to the Plaintiff Trustees;

(d)     Diverting funds away from the respective Fringe Funds, causing harm to the corpus of each Fund and endangering the Funds' ability to pay benefits to participants and beneficiaries;

(e)     Interfering with and/or eliminating requests for a payroll audit of delinquent employers during the relevant time period;

(f)     Failing to administer payment of Fringe Benefit contributions in accordance with the terms of the respective Plan documents;

(g)     Using Fund assets to pay benefits so as to misrepresent to Plaintiffs' participants that delinquent employers were properly remitting fringe benefit contributions when, in fact, the delinquent employers were not properly remitting fringe benefit contributions.

161.    Sufficient proofs have been submitted to Defendant showing that the intentional wrongdoing of Plaintiffs' employee caused the Funds to suffer damages, which is an insured loss under the subject insurance policy.

162.    As a result of the actions of Santucci, Plaintiffs Insurance and Welfare Fund, Profit Sharing Plan, Labor Management Committee and Trust and Craft Training Fund suffered significant damages, the exact amount to be determined at trial.

163.    Defendant, Fidelity has wrongfully refused and/or denied to pay these Plaintiffs for Plaintiffs' loss, as required under the terms of the insurance policy.

164.    An actual controversy exists between these Plaintiffs and Defendant.   The Court must determine the following:

(a)     The available insurance coverage available to Plaintiffs' claim;

(b)     Any coverage or policy disputes between the parties;

(c)     Other determinations, orders and judgments necessary to fully adjudicate the rights of the parties.

**WHEREFORE**, Plaintiffs Insurance and Welfare Fund, Profit Sharing Plan, Labor Management Committee and Trust, and Craft Training Fund seek declaratory judgment against the Defendant, Fidelity and Deposit Company of Maryland, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars that is fair, just and reasonable to make these Plaintiffs whole, and which includes unpaid fringe benefit contributions, liquidated damages, costs of collection and attorney fees.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues.


Respectfully submitted,


**SULLIVAN, WARD, ASHER,
& PATTON, P.C.**

By:     /s/ *Mathew I. Henzi*_____
**DAVID J. SELWOCKI (#4375499)
MATTHEW I. HENZI (#5368212)**
Attorneys for Plaintiffs
25800 Northwestern Highway
Suite 1000
Southfield MI  48075
(248) 746-0700
mhenzi@swappc.com

Dated:  October 25, 2016

W1869055.DOC